**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **GRINNELL CHERRY, II** | : | **NO. 10-091** |
| | : | |

**DuBOIS, J.**                                                    **August 9, 2010**

## M E M O R A N D U M

## I.     INTRODUCTION

Defendant, Grinnell Cherry, is charged in a one-count Indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Presently before the Court are Defendant's Motion To Suppress Physical Evidence and the Government's Motion *In Limine* To Admit Evidence Under Fed. R. Evid. 609(a)(1). The Court held a hearing on defendant's Motion to Suppress on June 10, 2010. The Court also heard oral argument on the government's Motion *In Limine* at the conclusion of the suppression hearing. For the reasons set forth below, defendant's Motion to Suppress is denied and the government's Motion *In Limine* is granted in part and denied in part.

## II.     BACKGROUND

In analyzing defendant's Motion to Suppress, which seeks the suppression of a firearm recovered during a traffic stop of defendant's vehicle on October 31, 2009, the Court must first address the Police Officer Jeffrey Middleton's earlier encounter with defendant on December 31, 2008. Middleton is a Philadelphia Police Officer who participated in vehicle stops of defendant on both dates.

At 5:20 p.m. on December 31, 2008, Officer Middleton attempted to stop a vehicle driven by defendant. (Suppression Hr'g Tr. 9, June 10, 2010.) As Middleton and his partner exited their car, defendant drove off, and a high speed vehicle pursuit ensued. (Id.) The pursuit ended when defendant crashed into another vehicle, injuring two adults and one child. (Id. at 10.) Middleton placed defendant under arrest and subsequently performed a driver's license record check on him, using the number listed on defendant's state issued photo ID. (Id. at 10-11.) The record check revealed that defendant "did not have a valid driver's license," and that "he had a suspended . . . Pennsylvania State photo ID."[1] (Id. at 11.) Accordingly, Middleton cited defendant for reckless driving and driving without a license. (Gov't. Supp. Resp. at 2; Ex. G2.) With respect to the citation, Middleton testified that individuals are not permitted to operate motor vehicles with only a photo ID. (Suppression Hr'g Tr. 12, June 10, 2010.)

On October 31, 2009, the date of the crime charged in the Indictment, Middleton was on patrol in a marked patrol car with his partner, Police Officer Daniel Eckert. (Id. at 7.) At approximately 11:20 p.m., Middleton saw defendant, who he recognized from the incident of December 31, 2008, enter the driver's seat of a minivan. (Id. at 7-8, 13.) The minivan was parked at the intersection of 74th Street and Andrews Avenue. (Id.) Defendant drove out of the parking space and proceeded northbound on Andrews Avenue toward Cheltenham Avenue. (Id. at 13.)

Based on his belief that defendant was violating 75 Pa. C.S.A. § 1501(a), which prohibits

---

[1] A Pennsylvania photo ID, or "identification card," may be issued to "any person ten years of age or older who has made application therefor in such manner as the [Department of Transportation] shall prescribe or whose driver's license has been surrendered to the [D]epartment because of a suspension or revocation of an operating privilege . . . . " 75 Pa. C.S.A. § 1510(b).

the operation of a motor vehicle on public roads without a valid driver's license,[2] Middleton

positioned his police car behind the minivan and activated its lights and siren. (Id. at 13, 17.)

Defendant pulled over without incident in front of Lynnewood Gardens, an apartment complex,

on the northwest corner of Cheltenham Avenue. (Id. at 14.) Middleton and Eckert exited their

patrol car; Middleton approached the driver side and Eckert the passenger side. (Id. at 15.)

When they reached the rear of the vehicle, Eckert saw a handgun "flying out of the passenger

side window." (Id. at 15, 47.) Eckert alerted Middleton, and proceeded to recover the weapon.

(Id. at 48.) The gun, which was found approximately eight feet from the passenger window, was

loaded with eleven live rounds.[3] (Id. at 48.) Eckert cleared the weapon and placed a property tag

on it. (Id. at 49.)

Upon hearing Eckert's alert, Middleton asked defendant to exit the vehicle and placed

him under arrest. (Id. at 16.) A subsequent search of the vehicle revealed that defendant was the

only occupant. (Id.) In answer to government counsel's question regarding whether Middleton

---

[2] Specifically, 75 Pa. C.S.A. § 1501(a) provides that: "No person . . . shall drive any motor vehicle upon a highway or public property in this Commonwealth unless the person has a driver's license valid under the provisions of this chapter."

[3] The Court notes that there is a discrepancy between the testimony of the police officers and related police reports, regarding the location where the gun was recovered. Middleton and Eckert both testified at the suppression hearing that the gun was recovered on Cheltenham Avenue. (Suppression Hr'g Tr. 15, 48, June 10, 2010.) However, all of the police reports relating to the incident, completed by Officer Eckert, state that the gun was recovered on the 7400 block of Andrews Avenue. (Id. at 30-32.) When asked to explain this discrepancy, both officers testified that they were trained at the police academy to record the incident location as the location where the traffic stop was initiated. (Id. at 33, 49.) In this case, the traffic stop was initiated on the 7400 block of Andrews Avenue. (Id. at 33.)

Eckert also admitted that he testified inaccurately at the preliminary hearing that he recovered the gun on the 7400 block of Andrews Avenue. (Id. at 49.) Eckert brought this error to the government's attention prior to the suppression hearing. (Id.) He stated that nerves, coupled with the police department directive to record the location where the infraction first occurred, led to that testimony. (Id. at 49-50.)

"[ran defendant's] information to find out if he had a valid driver's license" following the arrest, Middleton responded that he did, and that he determined that defendant "had a suspended photo ID." (Id. at 16.)

Regarding his basis for stopping defendant's vehicle on October 31, 2009, Middleton testified that he "had [no] reason whatsoever to believe that [defendant] could have obtained a driver's license [since December 31, 2008]." (Id. at 18.) Middleton conceded that he did not know the disposition of defendant's December 31 arrest. (Id. at 21.) Nonetheless, he cited the following factors as the basis for his belief: (1) the previous incident involved "fleeing police, driving through traffic stop signs, driving through red lights, [and] driving recklessly," and ultimately resulted in an accident that injured three people; (2) in light of such violations, which would appear on defendant's driving history, defendant would be unable to obtain a license within ten months if he applied for one; and (3) during his seven-and-one-half-years on the police force, Middleton was not aware of any instance in which a driver, whose license was suspended because of a traffic ticket he issued, had that license reinstated within ten months of the suspension.[4] (Id. at 7, 22, 34-35.)

Defendant filed a Motion to Suppress the firearm on April 14, 2010. The Government filed a Response and a Supplemental Response to the defendant's motion on May 20, 2010 and June 10, 2010 respectively. The Court held a hearing on defendant's Motion to Suppress on June

---

[4] The Court notes that defendant's Pennsylvania Department of Transportation Certified Driving History as of May 26, 2010 — Government Exhibit 4 in evidence at the suppression hearing — corroborates Middleton's testimony that defendant's license was suspended on December 31, 2008. Furthermore, Government Exhibit 4 demonstrates that, as of September 7, 2007, defendant's license was suspended beyond the incident date, October 31, 2009, to November 7, 2009. The driving history record is not probative of Middleton's reasons for stopping defendant's vehicle on October 31, 2009, because there is no evidence that Middleton was aware of the specific content of the record.

10, 2010. Following the suppression hearing, defendant filed a reply to the government's Supplemental Response on June 15, 2010.

## III.    DEFENDANT'S MOTION TO SUPPRESS

In his Motion to Suppress, defendant avers that (1) the traffic stop in question was an unreasonable seizure under the Fourth and Fourteenth Amendments, and (2) the gun, a fruit of the unlawful seizure, should be suppressed.  (Def.'s Mot. at 4, 8).  Defendant alleges that Middleton "did not possess sufficient reasonable suspicion to believe that a traffic violation had been committed."  (Def.'s Resp. at 8).

The government concedes that the traffic stop was a seizure.  (Gov't. Resp. at 4). However, the government argues that Middleton's determination that defendant "would have been unable to obtain a valid driver's license during the intervening period [December 31, 2008 to October 31, 2009] constituted . . . reasonable suspicion justifying the traffic stop."  (Gov't. Resp. at 5).  For the reasons set forth below, the Court concludes that the traffic stop was a reasonable seizure under the Fourth Amendment.

### A.    Legal Standard

"On a motion to suppress, the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable." United States v. Ritter, 416 F.3d 256, 261 (3d Cir. 2005) (citing United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995)).  The applicable burden is proof by a preponderance of the evidence.  United States v. Matlock, 415 U.S. 164, 178 n.14 (1974).

Stopping and detaining a vehicle and its occupants is a seizure under the Fourth Amendment to the United States Constitution.  Johnson, 63 F.3d at 245.  To be reasonable under the Fourth Amendment, a vehicle stop must be based on reasonable suspicion, not probable

cause.  United States v. Delfin-Colina, 464 F.3d 392, 397 (3d Cir. 2006).  Under Third Circuit precedent, "a traffic stop will be deemed a reasonable 'seizure' when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop."  Id. at 398.  Moreover, "an officer need not be factually accurate in [his] belief that a traffic law had been violated but, instead, need only produce facts establishing that [he] reasonably believed that a violation had taken place."  Id.  This standard has been described as "not particularly rigorous, as no traffic law need actually have been broken, nor does the stopping officer have to be correct regarding the facts."  United States v. Fleetwood, 235 F. App'x 892, 895 (3d Cir. 2007) (non-precedential).

To "evaluat[e] the constitutionality of a traffic stop, a court is free to examine the sufficiency of the reasons for the stop as well as the officer's credibility."  Johnson, 63 F.3d at 247; see also Delfin-Colina, 464 F.3d at 397 (noting that the court's mandate is to "weigh the totality of the circumstances—the whole picture").  The Court must consider whether the "rational inferences" from the facts presented "warrant the intrusion."  Delfin-Colina, 464 F.3d at 397.  Under the "authorization test" adopted by the Third Circuit, "the validity of a traffic stop should be evaluated on the officer's objective legal basis for the stop . . . ."  Johnson, 63 F.3d at 247.  The officer's subjective basis or pretextual reason for the stop is irrelevant, provided that the officer possessed reasonable suspicion that the defendant violated a traffic law.  Id. at 247–48.

**B.      Discussion**

The Court, in weighing the totality of the circumstances and drawing rational inferences from the facts presented, finds that Officer Middleton had an objective reasonable basis to initiate the traffic stop in question.  See Delfin-Colina, 464 F.3d at 397.  Middleton gave detailed

testimony about the December 31, 2008 incident, and explained that defendant not only led police on a high speed chase, but also caused a vehicle accident that injured three people. A record check performed by Middleton on December 31 further revealed that defendant did not have a valid driver's license at that time, and in fact, "had a suspended photo ID." (Suppression Hr'g Tr. 11, June 10, 2010.) Given the nature of defendant's traffic infractions of December 31 and Middleton's experience regarding the timing of license suspensions and reinstatements, Middleton had a reasonable basis to believe that defendant could not have obtained a valid driver's license by October 31, 2009.[5] Accordingly, the Court concludes that Middleton "reasonably believed that a [traffic] violation had taken place"—in this case, unlicensed driving—and that the traffic stop therefore constituted a reasonable seizure under the Fourth Amendment. See Delfin-Colina, 464 F.3d at 398.

Defendant acknowledges that the Court must weigh the totality of the circumstances, but argues that the information Middleton relied on was insufficient to support reasonable suspicion. Id.; (Def.'s Supp. Resp. at 8). Citing to a variety of analogous cases, defendant contends that Middleton's information was stale. (Def.'s Supp. Resp. at 8). These cases generally hold that justification for an investigatory stop dissipates as the time period between the traffic stop and the date the officer was last aware of the defendant's license suspension or revocation lengthens. Compare Boyd v. State, 758 So. 2d 1032, 1035 (Miss. Ct. App. 2000) (finding that officer did not have reasonable suspicion where he relied solely on information that was eight years old in initiating a traffic stop for suspicion of driving without a valid driver's license); Commonwealth

---

[5] The Court notes that Middleton did not know the disposition of the December 31, 2008 arrest. However, driving without a license in violation of 75 Pa. C.S.A. § 1501(a) is a summary offense under Pennsylvania law. Thus, it was reasonable for Middleton to assume that the citation he issued to defendant on December 31, 2008, had been adjudicated, and would appear on defendant's driving history.

v. Stevenson, 832 A.2d 1123 (Pa. Super. Ct. 2003) (same, but three year gap); Moody v. State, 842 So. 2d 754, 757-58 (Fla. 2003) (same, but one to three years); United States v. Laughrin, 438 F.3d 1245, 1246 (10th Cir. 2006) (same, but at least twenty-two weeks, and officer could not articulate details about his prior contacts with defendant); with State v. Kassube, 659 N.W.2d 499, 500-01 (Wis. Ct. App. 2003) (holding that officer, who knew defendant did not have a license throughout the nine years before the stop in question, had reasonable suspicion to stop defendant eleven months after he last knew that defendant did not have a driver's license); United States v. Pierre, 484 F.3d 75 (1st Cir. 2007) (holding that although the information relied on in initiating a traffic stop was five months old, officer had additional information that supported a finding of reasonable suspicion); United States v. Sandridge, 385 F.3d 1032 (6th Cir. 2004) (concluding that information that was three weeks old was not stale).

The Court rejects defendant's staleness argument. The staleness of information is not determined solely by its age. See Pierre, 484 F.3d at 83 (citing United States v. Bucuvalas, 970 F.2d 937, 940 (1st Cir. 1992), abrogated on other grounds, Cleveland v. United States, 531 U.S. 12 (2000)). "Rather, [the Court] must assess the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information." Id.

The Court concludes that the ten month interval in this case did not render stale the information Middleton relied upon in initiating the traffic stop. In contrast to the police officers in the cases cited by defendant, Middleton articulated additional facts supporting his belief that defendant was still driving without a license. See State v. Decoteau, 681 N.W.2d 803, 806 (N.D. 2004) (stating that "[p]robabilities, not hard certainties, are used in determining reasonable suspicion."). Specifically, Middleton was aware of the nature of defendant's prior

conduct—fleeing police, exceeding the speed limit, disregarding traffic signals, and causing a vehicle accident with injuries—and the impact that conduct would have on defendant's ability to obtain a valid driver's license. Unlike the officer in Laughrin, 438 F.3d at 1246, Middleton knew the exact date and the details of his last encounter with defendant. All of these factors, considered in the aggregate, demonstrate that Middleton possessed reasonable suspicion that defendant was "violating a traffic law at the time of the stop." Delfin-Colina, 464 F.3d at 398.

Defense counsel further argues that Middleton and Eckert were not credible based on the discrepancy between their testimony and the police reports regarding the location where the gun was recovered. See supra note 3. Despite this inconsistency, the Court finds Middleton and Eckert's testimony credible. In particular, the Court finds no evidence suggesting that either officer had a motive to fabricate a reason to stop defendant.

### C. Conclusion

Middleton provided comprehensive testimony on the factors he considered prior to initiating the traffic stop of defendant. Based on all of the evidence presented, the Court concludes that Middleton had the requisite reasonable suspicion to justify that stop, namely that defendant was driving without a valid driver's license in violation of 75 Pa. C.S.A. § 1501(a). Under such circumstances, the traffic stop was a reasonable seizure and did not violate defendant's Fourth Amendment rights. Accordingly, the gun was lawfully obtained by the police officers, and will not be suppressed.

## IV. GOVERNMENT'S MOTION *IN LIMINE*

The government seeks to admit evidence of defendant's two prior felony convictions for (1) carrying a firearm without a license, and (2) robbery, to impeach defendant if he testifies at trial; both convictions were in 2003. (Gov't. Mot. at 1.) Defendant opposes the government's

motion, arguing that the probative value of the convictions is substantially outweighed by the possibility of prejudice to defendant. (Def.'s Resp. at 6.)  For the reasons set forth below, the government's Motion is granted in part and denied in part.

### A.    Legal Standard

Federal Rule of Evidence 609 provides the standard for the use of prior convictions for impeachment purposes.  Under the Rule:

> For the purpose of attacking the character for truthfulness of a witness . . . evidence that an accused has been convicted of [a crime punishable by death or imprisonment in excess of one year] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused.

Fed. R. Evid. 609(a)(1).[6]

According to the Third Circuit, "Rule 609(a)(1) is absolutely clear and explicit in requiring the trial court, before admitting evidence of a prior conviction, to make a determination that the probative value of the evidence outweighs its prejudicial effect to the defendant." Government of Virgin Islands v. Bedford, 671 F.2d 758, 761 (3d Cir. 1982).  In making this determination, a court should consider the following four factors: "(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the witness' testimony to the case; [and] (4) the importance of the credibility of the defendant." Id. at 761 n.4.  The government bears the burden of demonstrating that the probative value of the prior conviction outweighs its prejudicial effect. Id.  The defendant is then permitted to rebut the Government's presentation, explicating the potentiality for unfair prejudice from admission of the evidence."

---

[6] Rule 609(a)(2) is not applicable to this case.  Rule 609(a)(2) mandates the admission of prior convictions involving "an act of dishonesty or false statement." Fed. R. Evid. 609(a)(2). Since the two prior convictions at issue in this case—gun possession and robbery—do not involve an act of dishonesty or a false statement, they fall under the purview of Rule 609(a)(1) and *not* Rule 609(a)(2).

Id. at 761 (internal citations omitted).

**B.    Analysis**

**1.    The kind of crime involved.**

Under the first factor in Bedford, the Court considers the nature of the prior conviction in deciding whether the probative value of a prior conviction outweighs its prejudicial effect. Bedford, 671 F.2d at 761 n.4.  The Court agrees with the reasoning of then-Judge Burger in Gordon v. United States, 383 F.2d 936 (D.C. Cir. 1967).  Where a defendant's prior conviction is for the same or substantially the same conduct as the charged crime there is "inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.'  As a general guide, those convictions which are for the same crime should be admitted sparingly."  Gordon, 383 F.2d at 940; but see United States v. Borrome, No. 97-0224-01, 1997 WL 786436, at *3 (E.D. Pa. Dec. 3, 1997) (admitting a prior drug conviction even though the defendant was charged with a drug-related crime).

The Court concludes that defendant's prior felony conviction for possessing a firearm is "substantially the same crime" as the instant offense, and the danger of unfair prejudice, even with a limiting instruction, substantially outweighs the probative value of the evidence. Notwithstanding a consideration of the age of the conviction, the importance of defendant's testimony, and the importance of defendant's credibility, the Court finds that these factors cannot counterbalance the "inevitable "prejudice that defendant would suffer if the 2003 gun possession conviction was used during cross-examination.  See Gordon, 383 F.2d at 940.  As such, the 2003 gun possession conviction is inadmissible.

However, defendant's robbery conviction is of a different nature. See, e.g. United States v. Monroe, 40 F. App'x 408, 409-10 (9th  Cir. 2002) (where defendant was charged with armed

robbery and using a firearm during crime of violence, impeachment through evidence of a prior conviction for bank robbery was admitted without sanitization); United States v. Meyers, 952 F.2d 914, 916-17 (6th Cir. 1992) (allowing the defendant, who was charged with distribution of cocaine and possession of a firearm, to be impeached with a prior conviction for armed robbery).

The Court's analysis of the robbery conviction under the first Bedford factor is influenced by the crime charged in this case. Because defendant has been charged as a felon-in-possession, the government is required to produce evidence regarding defendant's prior felony conviction.[7] In United States v. Johnson, 302 F.3d 139, 152 (3d Cir. 2002), the Third Circuit stated that the risk of unfair prejudice from evidence of a prior conviction in that case "was relatively slim" because "the jury already knew that there was an outstanding warrant for [the defendant's] arrest when he was taken into custody." Id. at 152-53. The jury in this case, like the jury in Johnson, will be made aware during the government's case-in-chief that defendant has been convicted of at least one felony.[8] Therefore, the proof required at trial lessens the possibility that defendant will suffer unfair prejudice as a result of the use of a separate felony conviction in cross-examination, under Federal Rule of Evidence 609.

The Court also notes that use of the robbery conviction is probative of truthfulness,

---

[7] In order to convict defendant as a felon in possession of a firearm or ammunition, the government must prove that: (1) the defendant had been previously convicted of a crime punishable by imprisonment for a term exceeding one year; (2) the defendant knowingly possessed a firearm or ammunition; and (3) the possession of the firearm or ammunition was in or affecting interstate or foreign commerce because the firearm or ammunition had traveled in interstate or foreign commerce at some time before defendant obtained possession of the firearm or ammunition. United States v. Dodd, 225 F.3d 340, 344 (3d Cir. 2000).

[8] Although the Third Circuit has not ruled on the admissibility of evidence regarding the type of felony for which a defendant was previously convicted when the defendant is charged with an offense having as one of the elements the fact that the defendant has a prior felony conviction, evidence that a defendant has been convicted of a felony is relevant and admissible. United States v. Jacobs, 44 F.3d 1219, 1224 (3d Cir. 1995).

further supporting its admissibility for impeachment purposes. In United States v. Smith, No. 04-680, 2006 WL 618843, at * 2 (E.D. Pa. Mar. 13, 2006), the court observed that "[c]rimes such as robbery and larceny have been found to reflect dishonesty on the part of the witness and are thus considered to be more probative of truthfulness [than other crimes]." The Court adopts the reasoning in Smith and applies it to its analysis of the first Bedford factor.

An appropriate limiting instruction, directing the jury to consider the conviction for impeachment purposes only, will further mitigate any potential prejudice to defendant. Defendant's argument that a limiting instruction is "insufficient to ensure that [defendant] receives a constitutionally fair trial," is unpersuasive. (Def.'s Resp. at 6); see Shannon v. United States, 512 U.S. 573, 585 (1994) (finding no reason "to depart from 'the almost invariable assumption of law that jurors follow their instructions'") (internal citations omitted).

Moreover, the government's use of the 2003 robbery conviction will be limited on cross-examination, if defendant testifies. Counsel for the government may not elicit testimony or make reference to the use of a firearm during the commission of the robbery. See United States v. Faulk, 53 F. App'x 644, 645 (3d Cir. 2002) ("[P]ermissible questioning typically is limited to the number of convictions, and the nature, time, and date of each.").

The Court concludes that the robbery conviction, sanitized of any reference to a firearm, is not "substantially the same crime" as the instant offense, and thus the first Bedford factor weighs in favor of admission.

### 2.     The age of the conviction.

"The probative value of a conviction decreases as its age increases." 4 Jack B.Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 609.05[3][c]. Furthermore, a conviction that is more than ten years old is subject to a "special balancing test under Rule 609(b) before it

may be admitted to impeach a witness." Id.  In this case, the 2003 robbery conviction is well

within the ten-year time frame contemplated by Rule 609(b).  See Fed. R. Evid. 609(b).

Therefore, this factor weighs in favor of admission.

### 3. The importance of defendant's testimony.

If a defendant's testimony is important to his defense, the third factor weighs against

admitting a prior conviction.  4 Weinstein's Federal Evidence § 609.05[3][e].  "If, on the other

hand, the defense can establish the subject matter of the defendant's testimony by other means,

the defendant's testimony is less necessary, so a prior conviction is more likely to be admitted."

Id.; see also United States v. Causey, 9 F.3d 1341, 1344 (7th Cir. 1993) (upholding admission of

a prior conviction because other witnesses reiterated defendant's testimony).

At this point in time, the government's evidence against defendant consists of the

testimony of Officers Middleton and Eckert, and the firearm recovered by Eckert.  Although

defendant has not argued as such, the Court notes that his testimony may be crucial to his

defense, as he is the only person who could refute the testimony of Middleton and Eckert.

Although the Court cannot anticipate what the substance of this testimony might be, the Court

concludes that this factor weighs against admitting the robbery conviction.

### 4. The importance of defendant's credibility.

Whether or not defendant's account of the events is found credible will be crucial to the

case should defendant decide to testify.  When a defendant testifies, he places his credibility

directly at issue. See United States v. Beros, 833 F.2d 455, 463-64 (3d Cir.1987).  Therefore, this

factor weighs in favor of admitting the robbery conviction.

### C. Admissibility of the Robbery Conviction

Defendant's 2003 conviction for robbery is probative of his credibility.  After analyzing

the robbery conviction under the four <u>Bedford</u> factors, the Court concludes that the probative value of such evidence outweighs any possible prejudice, and is therefore admissible pursuant to Fed. R. Evid. 609(a)(1). The sanitization of the robbery conviction of any reference to the use of a firearm, as discussed above, further mitigates the potential of prejudice to defendant.

For the foregoing reasons, the government's Motion In *Limine* To Admit Evidence Under Federal Rule of Evidence 609(a)(1) is granted in part and denied in part. The government is precluded from impeaching defendant on cross-examination with his 2003 conviction for possession of a firearm. However, the government may impeach defendant, if he chooses to testify, with the 2003 conviction for robbery, sanitized of any reference to the use of a firearm during the commission of the robbery.[9]

## V.     CONCLUSION

For the forgoing reasons, Defendant's Motion To Suppress Physical Evidence is denied. In addition, the Government's Motion *In Limine* To Admit Evidence Under Fed. R. Evid. 609(a)(1) is granted in part and denied in part — as set forth above, the government will be permitted to cross-examine defendant, if he testifies, regarding his 2003 robbery conviction, sanitized of any reference to the use of a firearm, but is precluded from cross-examining defendant in relation to his 2003 conviction for possession of a firearm.

An appropriate Order follows.

---

[9] In so ruling, the Court does not decide the way in which the government may use either of the two convictions to satisfy the first element of the offense charged in the Indictment. The parties did not brief that issue; it will be addressed at trial. However, the Court notes that while evidence of defendant's predicate conviction is relevant in a felon-in-possession case under Federal Rule of Evidence 403, <u>Old Chief v. United States</u>, 519 U.S. 172, 186 (1997), "where the defendant stipulates to his status as a felon for purposes of § 922(g)(1), the government may not refer to the specific name or nature of the defendant's prior convictions in its case-in-chief." <u>United States v. Kemp</u>, 546 F.3d 759, 763 (6th Cir. 2008) (citing <u>Old Chief</u>, 519 U.S. at 186-87).